UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EON THOMPSON,

                              Plaintiff,

            -against-

CITY OF NEW YORK, et al.,

                              Defendants.

---

Case No. 1:21-cv-08202 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Proceeding *pro se*, Eon Thompson ("Thompson" or "Plaintiff"), a correction officer employed by the New York City Department of Corrections (the "DOC"), brings this action against Koehler & Isaacs LLP ("Koehler & Isaacs"), Isaacs Devasia Castro & Wien LLP, Cory Garcia, Andrew Rowe, the Correction Officer's Benevolent Association, Inc. ("COBA"), the City of New York (the "City"), Bill de Blasio, Cynthia Brann, Vincent Schiraldi, Sarena Townsend, Cynthia Lindblom, Patricia LeGoff, Shulamit Neuman, Damon R. Storer, Amaurys Urena, Kevin F. Casey, Kara J. Miller, Joycelyn McGeachy-Kuls, Joni Kletter, Olga Statz, and Frank Ng (collectively, "Defendants").  ECF No. 117 (the "Third Amended Complaint" or "TAC").  Plaintiff alleges that after an altercation with an inmate at the DOC, he was accused of excessive force and subject to disciplinary proceedings pursuant to New York Civil Law Service Law Section 75, N.Y. Civ. Serv. Law § 75 ("Section 75").  Plaintiff asserts that his disciplinary proceedings were conducted by administrative law judges who had been improperly designated by Brann, then the DOC Commissioner.

Now before the Court are three motions to dismiss filed by Defendants in this action.  For the following reasons, Defendants' motions to dismiss are GRANTED.

1

## BACKGROUND[1]

### I.   Factual History

#### A.  The Parties

##### 1.  Plaintiff

Plaintiff has been a correction officer with the DOC since 2006.  TAC ¶¶ 3, 9, 32.

Plaintiff was originally assigned to the DOC's Correction Academy for training.  *Id.* ¶¶ 34-35.

From October 15, 2006 until December 20, 2009, Plaintiff was assigned to DOC's George

Motchan Detention Center located on Rikers Island.  *Id.* ¶ 36.  Since December 21, 2009,

Plaintiff has been assigned to DOC's Manhattan Detention Complex ("MDC").  *Id.* ¶ 37.

##### 2.  Defendants

De Blasio was Mayor of New York City.  *Id.* ¶ 11.  Brann was Commissioner of the

DOC until 2021, and Schiraldi was Brann's successor.  *Id.* ¶¶ 12-13.  Townsend was Deputy

Commissioner of Investigations of the DOC, Lindblom was Deputy General Counsel of the

DOC, LeGoff was an Agency Supervising Attorney at the DOC, and Neuman and Clarence

Smith, Jr.[2] were Agency Attorneys of the DOC.  *Id.* ¶¶ 14-18.  Storer and Urena were DOC

investigators.  *Id.* ¶¶ 19-20.  Casey, Miller, and McGeachy-Kuls were administrative law

judges in the City's Office of Administrative Trials and Hearings ("OATH"), *id.* ¶¶ 21-23, and

Kletter was Commissioner and Chief Administrative Law Judge of OATH, *id.* ¶ 24.  Statz was

---

[1] In ruling on this motion to dismiss, the Court assumes that the factual allegations contained in the Third Amended Complaint are true and views them in the light most favorable to Plaintiff.  *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 168 (2d Cir. 2023).  The Court also considers documents attached to or otherwise incorporated into the Third Amended Complaint.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).

[2] Smith was formerly a defendant in this action but was dismissed with Plaintiff's consent on July 21, 2023.  ECF Nos. 132, 138.

General Counsel of OATH and Ng was Acting Deputy General Counsel of OATH. *Id.* ¶¶ 25-26.

COBA is the municipal labor organization that represented Plaintiff during DOC collective bargaining matters and disciplinary proceedings. *Id.* ¶ 31. Rowe and Garcia were union-retained lawyers assigned to represent Plaintiff during the Section 75 disciplinary proceeding that is the subject of this action. *Id.* ¶¶ 27-28. Koehler & Isaacs (later known as Isaacs, Devasia, Castro & Wien LLP) was Rowe and Garcia's employer, and the law firm that COBA retained for Section 75 proceedings like Plaintiff's. *Id.* ¶¶ 29-30.

## B. The September 17, 2017 Incident

On September 17, 2017, Plaintiff was working in the Receiving Room (or "Intake") at MDC. *Id.* ¶ 41. Plaintiff was instructed by his supervisor, Captain Cottman ("Cottman"), to escort a particular inmate (the "Inmate") from Intake Holding Pen #8 to Intake Holding Pen #7; these two locations were a few feet apart from each other, separated by steel doors. *Id.* ¶ 41, 47. Cottman determined that the Inmate needed to be moved because he had partially ripped an iron plate off the wall of his cell and bent it into a sharp point, and had tampered with the plumbing inside of his cell, which caused flooding and a dangerous condition in Intake Holding Pen #8. *Id.* ¶¶ 42-45, 49. However, the Inmate refused to move cells. *Id.* ¶ 47. Upon receiving his orders from Cottman, Plaintiff entered Inmate Holding Pen #8 to escort the Inmate to Inmate Holding Pen #7. *Id.* ¶ 46.

A struggle ensued between the Inmate, Plaintiff, and other Correction Officers and Captains. *See id.* ¶¶ 49-70. Plaintiff alleges that, at one point during the struggle, "Plaintiff's open hand made contact with the [I]nmate's neck area, but at no time did Plaintiff compress the [I]nmate's neck." *Id.* ¶ 57. Plaintiff and other DOC staff eventually brought the Inmate to the floor of Inmate Holding Pen #8, but the Inmate continued to resist. *Id.* ¶¶ 61-63.

"Plaintiff then momentarily held the [I]nmate[']s head to the floor of Pen #8 to prevent him from bi[t]ing anyone, as the other officers struggled to apply the necessary mechanical restraints." *Id.* ¶ 64.  Plaintiff alleges that "[a]t no time did the [I]nmate exhibit any difficulty or distress in his breathing or claim that he could not breathe," *id.*, and that "[o]nce the mechanical restraints were applied to the [I]nmate, Plaintiff stopped holding the [I]nmate's head to the floor," *id.* ¶ 65.  Immediately thereafter, the Inmate was "brought to his feet" and "immediately began yelling obscenities, and exhibited no distress in his breathing." *Id.* ¶ 66.  After this incident, Plaintiff had no further contact with the Inmate.  *Id.* ¶ 71.

### C.  The Investigation

In accordance with the DOC's use-of-force policy, Plaintiff was interviewed by Captain Arias on the same day as the incident, *id.* ¶ 72, and submitted a use-of-force report. *Id.*  Arias also interviewed the other officers and captains involved in the incident and reviewed the DOC's video footage of the incident.  *Id.* ¶¶ 73-74.  Although Arias attempted to interview the Inmate on September 17, 2017, the Inmate refused to give a statement.  *Id.* ¶ 75.

Arias authored an "Investigating Supervisor's Report" regarding the incident, dated September 30, 2017.  *Id.* ¶ 77.  He concluded that a "use of force did occur," but that it was in accordance with the DOC's directives and that the "force used was necessary to promote good order and safety."  *Id.*  Arias's report further stated that "[a]ll staff reports are consistent," and that "the video footage of the incident . . . is consistent with what was reported."  *Id.* Plaintiff's "Tour Commander" also reviewed the video footage of the incident and Arias's report, and "concur[red] with Captain Arias's findings and conclusions" in a report dated October 2, 2017.  *Id.* ¶ 79 (quotation marks omitted).  Around this time, others at DOC also found that Plaintiff did not use excessive or impermissible force against the Inmate, including Assistant Deputy Warden and Tour Commander A. Ruggiero, *id.* ¶ 80, David Dueno, the

Facility Deputy Warden of Security, *id.* ¶¶ 81-82, and Plaintiff's Warden and Commanding

Officer, Tony Durante, *id.* ¶¶ 83-84; *see also id.* ¶¶ 85-86.

### D. Plaintiff's Section 75 Charges

On March 5, 2019, pursuant to Section 75, Plaintiff was served with administrative

charges and specifications from the Administrative Office at MDC and was ordered to report

to OATH on May 1, 2019.  *Id.* ¶¶ 96-97.  The charges and specifications alleged that, in

connection with the September 27, 2017 incident, Plaintiff "engaged in conduct unbecoming

an Officer and of a nature to bring discredit upon the Department[,] . . . inefficiently

performed his duties, . . . failed to anticipate a Use of Force incident, and failed to notify a

supervisor as related to [the Inmate] who refused orders to exit Intake Holding Pen Number

Eight (8)."  *Id.* ¶ 97.

Upon being notified of the charges and specifications against Plaintiff, COBA

informed Koehler & Isaacs.  *Id.* ¶ 112.  Koehler & Isaacs initially assigned Rowe to represent

Plaintiff.  *Id.*  COBA and Koehler & Isaacs did not provide Plaintiff with any discovery from

DOC in relation to the charges and did not investigate the allegations against Plaintiff.  *Id.*

¶¶ 113-126.  Plaintiff also alleges that "COBA did not give Plaintiff the opportunity to choose

whether Plaintiff preferred a lawyer to represent him in the disciplinary action or . . . a non-

lawyer union-representative to represent him."  *Id.* ¶ 121; *see also id.* ¶¶ 122, 127.

Plaintiff appeared at OATH for the May 1, 2019 hearing, where he met Rowe for the

first time.  *Id.* ¶¶ 111, 129.  To Plaintiff, Rowe seemed uninterested, ignored his questions,

and stated that he had never watched the video footage of the September 17, 2017 incident.

*Id.* ¶¶ 130-134.  Rowe told Plaintiff that DOC's settlement offer was for Plaintiff to forfeit 40

vacation days (or other compensation time).  *Id.* ¶¶ 135-136.  Plaintiff rejected that offer.  *Id.*

¶ 138.  Plaintiff alleges that Rowe then spoke with Smith, LeGoff, other lawyers, and an

administrative law judge outside of Plaintiff's presence. *Id.* ¶ 144. Rowe then returned to Plaintiff and informed him that DOC would accept 35 vacation days to settle the disciplinary charges. Plaintiff rejected that offer as well. *Id.* ¶ 146.

Plaintiff was then ordered to appear for a second hearing on July 25, 2019. *Id.* ¶ 148. Koehler & Isaacs assigned Garcia to represent Plaintiff at this hearing. *Id.* ¶ 149. Plaintiff alleges that Garcia did not inform him of his rights, failed to meet him before the hearing, did not examine the DOC's case or examine any discovery items, and did not review case strategy with him. *Id.* ¶¶ 150-155. Instead, Garcia "only discussed DOC's settlement offer" which had decreased to a forfeiture of 20 vacation days. *Id.* ¶ 156. Plaintiff also rejected that offer. *Id.* ¶ 157. Garcia conferred with others, and then informed Plaintiff that the hearing was over and that he would have further disciplinary proceedings later that year. *Id.* ¶¶ 147, 157-158.

### E. Wayne and Angela Tatum

Plaintiff subsequently retained Wayne and Angela Tatum, non-lawyer "consultants," to represent him in his Section 75 case. *Id.* ¶¶ 161-172. On December 18, 2019, Plaintiff, accompanied by Wayne Tatum, reported to OATH for another conference, where he was served with Amended Charges and Specifications by the DOC. *Id.* ¶¶ 169-170.

Plaintiff alleges that Wayne Tatum discovered that the City "operates an illegal scheme of disciplining its permanent public employees in violation of their right to procedural due process in § 75 disciplinary proceedings." *Id.* ¶¶ 174-177.

### F. The Alleged Section 75 Scheme

Plaintiff makes a number of other allegations and arguments, spanning hundreds of paragraphs of his Third Amended Complaint, regarding the City's alleged scheme to deprive public employees of their due process rights. Plaintiff alleges that as DOC Commissioner, Brann was required to conduct Section 75 disciplinary proceedings herself, *id.* ¶¶ 179-198, or

that to the extent that she designated others to conduct Section 75 disciplinary proceedings, she was required to do so via a particular type of writing. *Id.* ¶¶ 190-201. Rather than making proper designations, Plaintiff alleges that Brann improperly designated administrative law judges via letters that were similar to a "1991 case" at OATH, and pursuant to a mayoral executive order (the "MEO"). *Id.* ¶¶ 193-194, 201-202; *see id.* ¶ 219 ("Brann's so-called designation letters were part of a larger scheme to defraud Plaintiff of his right to procedural due process."). Plaintiff further alleges that the MEO, which Wayne Tatum researched, is unlawful. *Id.* ¶ 201-210. Plaintiff therefore alleges that his Section 75 disciplinary proceeding (which was not conducted by Brann, but rather by designated administrative law judges) was commenced without jurisdiction. *Id.* ¶ 207. Plaintiff further alleges that others in the DOC and OATH and persons associated with the City similarly violated his rights because they were themselves improperly designated by Brann, or were otherwise aware of and did not stop Brann's improper designation of administrative law judges to conduct Section 75 proceedings. *Id.* ¶¶ 212-329, 404-412. Plaintiff also alleges that the Koehler & Isaacs, Rowe, and Garcia (collectively, the "Law Firm Defendants") and COBA were "willful participants" in the allegedly unlawful scheme with the DOC and the City. *Id.* ¶¶ 330-403.

### G. Penalty

Following the disciplinary proceedings, Plaintiff received a penalty of 55 days' suspension from duty without pay. *Id.* ¶¶ 175, 226-230.

## II.   Procedural History

Plaintiff commenced this action on October 5, 2021. ECF No. 1. After various defendants filed motions to dismiss and/or indicated that they intended to do so, ECF Nos. 35, 38, 44, Plaintiff sought leave to amend his complaint, ECF No. 46. The Court granted Plaintiff's request and denied Defendants' motions as moot. ECF No. 47. Plaintiff filed an

amended complaint on May 2, 2022.  ECF No. 51 (the "First Amended Complaint").
Defendants requested a conference to discuss anticipated motions to dismiss the First
Amended Complaint.  ECF No. 65.  Plaintiff then sought leave to file a second amended
complaint on June 6, 2022.  ECF No. 82.  The case was reassigned to the undersigned on
September 26, 2022.  ECF No. 85.

On October 20, 2022, the Court granted Plaintiff's request to file a second amended
complaint, ECF Nos. 97, 99, which Plaintiff filed on December 12, 2022, ECF No. 102 (the
"Second Amended Complaint").  Certain defendants moved to dismiss the Second Amended
Complaint on January 3, 2023.  ECF No. 103.  On February 9, 2023, Plaintiff sought leave to
amend yet again.  ECF No. 112.  The Court granted Plaintiffs' request to amend the Second
Amended Complaint on February 13, 2023, and warned that "[t]here will be no further
opportunities to amend."  ECF No. 113.  On March 14, 2023, Plaintiff filed the operative
Third Amended Complaint.  TAC.  The Court then denied the pending motion to dismiss the
Second Amended Complaint as moot.  ECF No. 120.

On April 18, 2023, the Law Firm Defendants moved to dismiss the Third Amended
Complaint.  ECF No. 119 ("LFD Br.").  On April 19, 2023, COBA also moved to dismiss the
Third Amended Complaint, ECF No. 121 ("COBA Br."), as did the City, de Blasio, Brann,
Schiraldi, Townsend, Lindblom, LeGoff, Neuman, Storer, Urena, Casey, Miller, McGeachy-
Kuls, Kletter, Statz, and Ng (collectively, the "City Defendants").  ECF No. 122 ("City Br.").
Plaintiff opposed the motions on June 1, 2023.  ECF No. 123 ("Opp."); *see also* ECF No. 124
(declaration of non-lawyer Wayne Tatum in support of Plaintiff's opposition).  The Law Firm
Defendants filed a reply in further support of their motion on June 28, 2023, ECF No. 125
("LFD Reply"), as did the City Defendants, ECF No. 126.  The Law Firm Defendants

provided supplemental briefing in further support of their motion to dismiss on August 16, 2023.  ECF No. 140.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court draws all reasonable inferences in the plaintiff's favor and accepts as true all non-conclusory allegations of fact.  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc); *see also Iqbal*, 556 U.S. at 678.  However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Here, Plaintiff is proceeding *pro se*.  The Court construes *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interprets them "to raise the strongest arguments that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted).

## DISCUSSION

The Court examines COBA's motion and the Law Firm Defendants' motion together, and then examines the City Defendants' motion.  For the following reasons, all three motions are granted.

## I.   COBA's and the Law Firm Defendants' Motions

Plaintiff brings two causes of action against COBA and the Law Firm Defendants.  First, Plaintiff brings claims under 42 U.S.C. § 1983 ("Section 1983") based on the allegations that COBA and the Law Firm Defendants violated his due process rights.  TAC ¶¶ 330-403.  Second, Plaintiff brings claims under 42 U.S.C. §§ 1985 and 1986 ("Section 1985" and "Section 1986," respectively) based on allegations that COBA and the Law Firm Defendants conspired with others to interfere with his civil rights.  TAC ¶¶ 511-534.  The Court examines the Section 1983 claims first, followed by the conspiracy claims.

### A.  Section 1983

Section 1983 authorizes a civil action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "Section 1983 'is not itself a source of substantive rights.'"  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Rather, it provides "a method for vindicating federal rights elsewhere conferred."  *Id.* (citation omitted).

Importantly, Section 1983 provides remedies for violations of federal statutory and constitutional rights only by persons acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  "Private actors . . . generally are not proper defendants to a 42 U.S.C. § 1983 action, because they do not act under color of state law."  *White v. Monarch Pharms.,*

*Inc.*, 346 F. App'x 739, 740 (2d Cir. 2009) (summary order).  However, a private actor may

be liable under Section 1983 where "there is a sufficiently close nexus between the State and

the challenged action of the [private actor] so that the action of the latter may be fairly treated

as that of the State itself."  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).  The

Second Circuit has identified "three main tests" for determining whether a challenged activity

may be state action.  *Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022).  "[T]he challenged

activity may be state action when it results from the State's exercise of coercive power, when

the State provides significant encouragement, either overt or covert, or when a private actor

operates as a willful participant in joint activity with the State or its agents."  *Brentwood

Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (quotation marks and

citations omitted); *accord Barrows*, 24 F.4th at 135 (identifying the "three main tests" as "the

compulsion text," "the joint action test," and "the public function text" (quotation marks and

citation omitted)).

### 1.  COBA

Defendant COBA argues that the Section 1983 claims against it must be dismissed

because COBA is not a state actor and Plaintiff has not adequately alleged that COBA was

otherwise acting under color of state law.  *See* COBA Br. at 9-11.  In opposition, Plaintiff

asserts that "COBA never offered [him]s a choice between union representation or legal

counsel in the . . . disciplinary proceeding that is the subject of the instant action."  Opp.

¶¶ 58.  Plaintiff also asserts that "COBA was/is recognized as the sole and exclusive

representative for New York City Corrections Officers," *id.* ¶ 62, and that "COBA notified

Koehler & Isaacs LLP of the charges and specifications made against me, after COBA

received that information from DOC," *id.* ¶ 64.  Plaintiff admitted in the Third Amended

Complaint that "COBA is a private entity," TAC ¶ 332, and thus, the only question is whether

COBA acted under color of state law.

The Court reviews Plaintiff's allegations in the Third Amended Complaint to raise the

"strongest arguments" possible. *Triestman*, 470 F.3d at 474 (citation omitted). Here, Plaintiff

alleges that "COBA was a willful participant engaged in joint prohibited activity with DOC

and Defendant City." TAC ¶ 332 (emphasis and citations omitted). Plaintiff further alleges

that COBA was "directly aware and constructively aware of the fact that DOC was"

conducting Section 75 disciplinary hearings through designated administrative law judges. *Id.*

¶ 353. Plaintiff alleges that "by taking no action to oppose DOC's use of [the challenged

directive], COBA is demonstrably in agreement with DOC[]." *Id.* ¶ 355. Plaintiff alleges that

COBA did not take "any action to stop Kletter and Casey from conducting Plaintiff's § 75

disciplinary hearing at OATH," *id.* ¶ 368, and that "even after Plaintiff retained the services of

Tatum, COBA . . . still represented . . . the other officers involved in the same use of force

incident as Plaintiff," *id.* ¶ 369. Plaintiff also alleges that the City provides vehicles to COBA

executive board members, and that COBA pays for the gas and maintenance of those vehicles

"to keep COBA from opposing the City in the City's illegal disciplinary practices against

members of COBA[,] such as Plaintiff." *Id.* ¶¶ 396-397. Finally, Plaintiff alleges that

"COBA's motivation for not defending Plaintiff's due process rights in Plaintiff's § 75

disciplinary hearing is, *inter alia*, for both financial reasons and the prestige that comes with

being a Union executive board member[,] as well as for being authorized to be absent from

correction officer duties." *Id.* ¶ 400.

Accepting these allegations as true and viewing them in the light most favorable to

Plaintiff, these allegations do not support a claim that COBA acted under color of state law.

As detailed above, Plaintiff makes no nonconclusory factual allegations supporting an

inference that the State exercised "coercive power" over COBA, provided "significant encouragement" to COBA, or that COBA actually acted as a "willful participant in joint activity" with the State. *Brentwood*, 531 U.S. at 296 (citations omitted). To begin with, Plaintiff's conclusory allegation that COBA was a "willful participant in joint activity with DOC and Defendant City," TAC ¶ 332, is a bare legal conclusion and thus cannot support Plaintiff's claim, *see Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, it cannot be said that the City's provision of vehicles for COBA members and that COBA "did not stop" Plaintiff's Section 75 disciplinary hearing means that COBA acted under color of state law. That COBA merely cooperated with the DOC and the City in Section 75 proceedings is not enough to show that the "action of [COBA] may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351. As the Second Circuit has explained, labor unions like COBA "generally are not state actors." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). As an example, in *Ciambriello*, the plaintiff alleged that his union acted under color of state law when the union agreed with a state entity that the union could conduct grievance proceedings on behalf of the union-member. *See id.* at 324. The Second Circuit explained that a "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity," and that, therefore, the plaintiff had not adequately pleaded that the union acted under color of state law. *Id.* Here, too, Plaintiff's conclusory allegations regarding some joint activity and a relationship between COBA, DOC, and the City does not mean that COBA acted under color of state law. Thus, this claim must be, and is, dismissed.

### 2.  The Law Firm Defendants

The Law Firm Defendants also argue that the Section 1983 claim against them must be dismissed because they are purely private actors who did not act under color of state law.  *See* LFD Br. at 5-7.  In opposition, Plaintiff argues that "[b]ecause the agency, DOC, could not just say to COBA that Mr. Thompson was charged with misconduct without providing copies to COBA of the charges and specifications made against Mr. Thompson, then there was a meeting of the minds by COBA, DOC, and the [Law Firm Defendants] on the improper disciplinary action that was taken against Mr. Thompson."  Opp. ¶ 75.  Further, Plaintiff argues that the Law Firm Defendants "hid the fact that they were aware that DOC was proceeding against Mr. Thompson in violation of Civil Service Law Section 75" and that they "took no legal action . . . to stop the illegal disciplinary action."  *Id.* ¶ 76.

Plaintiff admitted in the Third Amended Complaint that the Law Firm Defendants "are private entities or persons," TAC ¶ 333, and therefore, the only remaining issue is whether the Law Firm Defendants acted under color of state law.  Plaintiff also concedes in his opposition that "DOC did not have a relationship, contractual or otherwise, with Koehler & Isaacs LLP."  Opp. ¶ 64.  Thus, Plaintiff appears to concede that the Law Firm Defendants were not acting under color of state law, given that they did not have any relationship with DOC.  Nevertheless, the Court examines the Third Amended Complaint to determine the "strongest arguments" it suggests.  *Triestman*, 470 F.3d at 474 (citation omitted).

Plaintiff alleges that the Law Firm Defendants "were willful participants engaged in joint prohibited activity with DOC and [the] City."  TAC ¶ 333.  Plaintiff also alleges that he was disappointed in the Law Firm Defendants' representation of him, *see, e.g.*, *id.* ¶¶ 123-150, and that he came to believe that the Law Firm Defendants were "working with" the City and DOC "against him, and not for him," *id.* ¶ 160.  Plaintiff further alleges that the former COBA

president, Norman Seabrook, selected Koehler & Isaacs to act as attorneys for COBA members, and that before Seabrook was the COBA president, he was the personal driver of Richard Koehler (a partner at Koehler & Isaacs).  *Id.* ¶¶ 340-341.  Additionally, Plaintiff alleges that despite representing a number of DOC employees in connection with disciplinary proceedings, the Law Firm Defendants have never attacked the designation of administrative law judges at OATH as unlawful.  *Id.* ¶¶ 348-393.

Accepting these allegations as true and viewed in the light most favorable to Plaintiff, these allegations do not come close to alleging that the Law Firm Defendants acted under color of state law.  There are no allegations supporting an inference that the State exercised "coercive power" over the Law Firm Defendants, provided "significant encouragement" to the Law Firm Defendants, or that the Law Firm Defendants actually acted as "willful participant[s] in joint activity" with the State.  *Brentwood*, 531 U.S. at 296 (citations omitted).  Plaintiff's allegation that the "Law Firm Defendants were willful participants engaged in joint prohibited activity with the DOC and Defendant City," TAC ¶ 333, is a bare legal conclusion and cannot support Plaintiff's claim, *see Iqbal*, 556 U.S. at 678.  Plaintiff also alleged dissatisfaction with his counsel's work, but this does not support an inference that his counsel was coerced by or acting jointly with the DOC or the City.  That Plaintiff's lawyers attempted to negotiate a settlement on his behalf was a necessary function of their role as his counsel, and that Seabrook was Mr. Koehler's driver before Seabrook became the president of COBA does not lead the Court to infer that his lawyers were willful participants in a joint scheme with COBA, the DOC, and the City.  As explained above, a "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  *Ciambriello*, 292 F.3d at 324.  Thus, this claim is dismissed.

### B. Sections 1985 and 1986

Section 1985 has three subparts, but "[a]s Plaintiff is not a federal official and his claims are not related to the participation of witnesses in judicial proceedings, Sections 1985(1) and 1985(2) do not apply." *Bird v. County of Westchester*, No. 20-cv-10076 (NSR), 2022 WL 2263794, *10 (S.D.N.Y. June 23, 2022) (quotation marks and citation omitted). "To state a conspiracy under Section 1985(3), a plaintiff must allege '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.'" *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). For a Section 1985(3) claim to prevail over a motion to dismiss, the alleged conspiracy "must also be motivated by 'some racial[,] or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian*, 7 F.3d at 1088 (quoting *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

Section 1986 "provides a cause of action against anyone who[,] having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Id.* (quotation marks and citation omitted). "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.*

The Law Firm Defendants argue that Plaintiff fails to adequately allege a conspiracy under Sections 1985 and 1986. Among other reasons, the Law Firm Defendants argue that Plaintiff failed to allege that the purported conspiracy was "motivated by some racial[,] or perhaps otherwise class-based, invidious discriminatory animus," as required for a Section 1985(3) claim. LFD Br. at 8 (quoting *Mian*, 7 F.3d at 1088). The Law Firm Defendants also

argue that, because Plaintiff's 1985 claim fails, there can be no Section 1986 claim.  *See id.*
COBA also argues, for various reasons, that Plaintiff's conspiracy claims are not adequately
pleaded.  *See* COBA Br. 11-14.  In opposition, Plaintiff argues that COBA's motion and the
Law Firm Defendants' motion "should be rejected and denied in every respect," but does not
specifically address the arguments raised regarding his conspiracy claims.  Opp. ¶¶ 69, 77.

Here, Plaintiff makes no allegations whatsoever that the alleged conspiracy was
motivated by racial, class-based, or other invidious motives.  *See generally* TAC.  Rather,
Plaintiff alleges that the Law Firm Defendants were motivated by "financial reasons," *id.*
¶ 399, and that COBA was motivated by "financial reasons," "prestige," and the ability to be
"absent" from other duties, *id.* ¶ 400.  Accordingly, Plaintiff's claims under Section 1985
must be dismissed.  Because Plaintiff has not articulated a claim under Section 1985, his
Section 1986 claims are also necessarily dismissed.  *See Mian*, 7 F.3d at 1088.

## II.    City Defendants' Motion

Plaintiff brings five causes of action against the City Defendants.  First, Plaintiff
brings a Section 1983 claim against Brann, Kletter, Casey, Miller, McGeachy-Kuls, and
Schiraldi, alleging that they violated Plaintiff's constitutional rights to procedural due process.
TAC ¶¶ 178-329, 404-412.  Second, Plaintiff brings a claim for *Monell* liability against the
City and de Blasio.  *Id.* ¶¶ 413-454.  Third, Plaintiff brings a claim for violations of the New
York City Charter §§ 1048 and 1049(1)(a) and the Mayor's Executive Order #105 against the
City, Kletter, Casey, Miller, McGeachy-Kuls, Statz, and Ng.  *Id.* ¶¶ 455-478.  Fourth, Plaintiff
brings a Section 1983 claim against Casey, Kletter, Statz, and Ng, alleging that they violated
Plaintiff's Fourteenth Amendment "liberty interest right." *Id.* ¶¶ 479-510 (capitalization
omitted).  Fifth, Plaintiff brings a claim under Sections 1985 and 1986, alleging that the City
Defendants conspired with others to violate Plaintiff's civil rights.  *Id.* ¶¶ 511-534.  All of

Plaintiff's claims are based upon the alleged scheme to deprive civil employees of their rights in Section 75 proceedings, as outlined earlier in this opinion.

### A. Res Judicata

The City Defendants argue that Plaintiff's claims against them are barred by res judicata.  *See* City Br. at 6-8.  The Court agrees.

"A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019) (citation omitted).  Thus, "[i]n determining whether res judicata applies to a New York state court judgment, this Court applies New York res judicata law."  *Corbett v. City of New York*, 816 F. App'x 551, 553 (2d Cir. 2020) (summary order).  "New York's transactional approach to res judicata bars a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief."  *Mountain Tobacco Co.*, 942 F.3d at 543 (quotation marks and citation omitted).

Plaintiff previously brought an action in the Supreme Court of the State of New York, County of Queens (the "State Court"), against Brann, Tynia D. Richard (the then-acting chief administrative law judge at OATH), Miller, DOC, OATH, and the City (collectively, the State Court Defendants).  *See* ECF No. 122-3 (Plaintiff's initial petition in the State Court action).[3] Plaintiff's action was based on the Section 75 proceeding related to the September 17, 2017 incident.  There, Plaintiff alleged that Brann improperly assigned Section 75 proceedings to administrative law judges instead of handling them herself, and that Brann improperly

---

[3] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *LaFleur v. Whitman*, 300 F.3d 256, 267 n.1 (2d Cir. 2002) (citation omitted).

designated administrative law judges to conduct Section 75 proceedings.  *See generally id.*

Plaintiff alleged violations of N.Y. C.P.L.R. Article 78, the New York Constitution, and the

Fourteenth Amendment of the United States Constitution.  *See id.* at 2.  Plaintiff requested the

State Court to "issue an order compelling Respondent Brann to perform her duty under Civil

Service Law Section 75; prohibiting Respondents Brann and Richard from proceeding further

in his Civil Service Law Section 75 disciplinary proceeding; declaring the written designation

letter to be improper and not in accord with Civil Service Law Section 75; staying any further

proceedings in [Plaintiff's OATH case;]" and for costs and other relief.  *Id.* at 15.  The State

Court granted the State Court Defendants' motion to dismiss Plaintiff's claim.  ECF

No. 122-5.  The State Court specifically held that "[Plaintiff's] claim that respondent Cynthia

Brann improperly assigned the disciplinary proceeding to an administrative law judge instead

of handling it herself is without merit."  *Id.* at 2.  The State Court additionally held that

"[Plaintiff's] further argument that respondents Tynia D. Richard and Kara J. Miller did not

have the authority to conduct a disciplinary proceeding is also without merit."  *Id.* at 2.  The

State Court explained that, according to the materials submitted by Plaintiff, Brann had

properly authorized the Chief Administrative Law Judge of OATH to conduct administrative

due process hearings.  *See id.*  Accordingly, the State Court granted the State Court

Defendants' motion to dismiss.  *See id.* at 3.

   Applying New York state law, the Court finds that the claims asserted in the TAC

against the City Defendants arise out of the "same factual grouping" as those asserted in the

State Court action,[4] and thus, the claim is barred by res judicata "even if the later claim is

---

[4] The Court notes that Plaintiff's previous action in State Court was brought pursuant to N.Y.
C.P.L.R. Article 78, and that "an Article 78 proceeding generally does not preclude a
subsequent § 1983 proceeding."  *Corbett*, 816 F. App'x at 553.  "This is because the types of
damages sought pursuant to § 1983 are typically not available in Article 78 proceedings,

based on different legal theories or seeks dissimilar or additional relief." *Mountain Tobacco Co.*, 942 F.3d at 543 (citation omitted). Plaintiff's claims in both actions are based on the allegations that his Section 75 proceedings related to the September 17, 2017 incident were conducted without jurisdiction to do so, because Brann should have conducted Section 75 proceedings herself or alternatively because Brann improperly designated others to conduct Section 75 proceedings. *Compare* TAC, *with* ECF No. 122-3. These allegations thus encompass the "same factual grouping." *Mountain Tobacco Co.*, 942 F.3d at 543 (citation omitted).

None of Plaintiff's arguments in his opposition brief changes this conclusion. First, Plaintiff argues that the State Court decision is "not signed" and is a "forgery." Opp. ¶¶ 5-8. Plaintiff offers no support for this bald assertion. The Court has independently reviewed the State Court decision and finds that it is signed and is consistent with the State Court's online records. Plaintiff also asserts that he is "convinced that [the State Court Defendants] fraudulently created [the State Court decision] and filed it in the Queens County Clerk's Office[,] using their influence as the City's Law Department." *Id.* ¶ 19. As Plaintiff offers no support whatsoever for this assertion, it is insufficient to state a claim.

---

which allow only recovery of incidental damages." *Id.* at 554. Here, however, Plaintiff's previous action in State Court "was not a simple Article 78 proceeding . . . [but rather] was a hybrid proceeding," *id.*, seeking both Article 78 relief and a declaration that "the written designation letter [was] improper and not in accord with Civil Service Law Section 75," ECF No 122-3 at 15. This additional form of relief is not available in an Article 78 proceeding. *See* N.Y. C.P.L.R. § 7803 (listing the "only questions" that may be raised in an Article 78 proceeding). The State Court "addressed the non-Article 78 claims on the merits, rendering the state proceeding a hybrid proceeding." *Corbett*, 816 F. App'x at 554. Thus, Plaintiff could have, and should have, raised all of his claims asserted in the present action in the State Court proceeding.

Plaintiff also asserts that he offered to settle and discontinue the State Court action and that, therefore, the claims asserted in the State Court should not preclude this later action. *See id.* ¶¶ 18-20. However, Plaintiff also notes that the State Court Defendants never agreed to settle and discontinue the State Court litigation, *see id.* ¶ 20, and it appears that Plaintiff never filed a voluntary dismissal of the State Court action. Thus, the State Court adjudicated his claims on the merits.

Plaintiff also argues that the content of the State Court decision is inaccurate in certain respects because it referred to a document as a "Petition Affirmation" that Plaintiff asserts was a "Verified Petition," *id.* ¶¶ 9-12, and because the State Court incorrectly applied precedent in reaching its decision on the merits of Plaintiff's case, *id.* ¶¶ 21-27. Even if there were inaccuracies or mistakes in the State Court decision, the proper route for Plaintiff to express his disagreements with the State Court would have been to appeal that decision, not to bring a successive action in federal court.

Additionally, Plaintiff argues that "the Hearing Officer that conducted my Civil Service Law Section 75 disciplinary hearing . . . alone concluded he had jurisdiction," and that a "court without jurisdiction of the subject-matter of an action can acquire no jurisdiction by erroneous decision that it has jurisdiction." *Id.* ¶ 39. But it is inaccurate to suggest that only the Hearing Officer concluded that he had jurisdiction over Plaintiff's Section 75 case. Indeed, Plaintiff raised precisely the same types of jurisdictional challenges in the State Court action, and the State Court considered and dismissed them. *See* ECF Nos. 122-3, 122-5.

Finally, Plaintiff argues that in the State Court proceeding, he "never claimed a violation of [his] due process rights," because at the time that he commenced that proceeding, "there was no violation of my state or federal due process rights." Opp. ¶¶ 40-41. Plaintiff is incorrect: he brought the State Court action alleging a violation of the "U.S. Constitution

Fourteenth Amendment."  ECF No. 122-3 at 2.  Moreover, to the extent that res judicata would not bar Plaintiff's procedural due process claim against the City Defendants in this action, that claim also fails on the merits.  Where, as here, New York law provides a civil service employee with an opportunity to contest a deprivation of rights, such as through an Article 78 proceeding, "the Fourteenth Amendment requirement is fully satisfied."  *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 198 (S.D.N.Y. 2006); *see Gudema v. Nassau County*, 163 F.3d 717, 724-25 (2d Cir. 1998) (the availability of an Article 78 proceeding after a deprivation of rights provides a plaintiff with due process, even if the plaintiff fails to take advantage of that proceeding).  Thus, Plaintiff's claim for procedural due process also fails on the merits.

In sum, the Court dismisses all claims against the City Defendants.

### B.  Plaintiff's Request for Sanctions

Plaintiff also requested that the Court sanction the City Defendants under Rule 11, alleging broadly that the State Court decision is an unsigned forgery and that the attorney declaration submitting the decision was part of a scheme between the State Court and the City Defendants to deprive Plaintiff of his rights.  *See* Opp. ¶¶ 3-34.  The City Defendants oppose that request.  *See* City Reply at 5-8.

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).

Here, Plaintiff has not followed the requirements of Rule 11. First, Plaintiff has not shown that he provided proper notice to the City Defendants before filing his motion with the Court. *See Fierro v. Gallucci*, 423 F. App'x 17, 18-19 (2d Cir. 2011) (summary order) (failure to provide 21-day safe harbor pursuant to Rule 11 dictated that "the district court was required to deny plaintiffs' motion for sanctions"). Second, Plaintiff did not file his request "separately from any other motion," Fed. R. Civ. P. 11(c)(2), as he filed it in the same document in which he opposed three separate motions to dismiss, *see generally* Opp. For these reasons, Plaintiff's request for sanctions is procedurally improper and therefore is denied.

Even if Plaintiff's request for sanctions were procedurally proper, the Court still would not impose sanctions. Rule 11 requires attorneys filing papers with the court to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Id. 11(c)(1). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). But "Rule 11 sanctions are not warranted where the evidentiary support is merely weak and the claim is unlikely to prevail." *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016) (quotation marks and citation omitted). Moreover, "the decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion." *Id.* (brackets, ellipsis, and citation omitted).

Here, Plaintiff offers no support for his claims that the City Defendants submitted false or forged documents from the State Court. Indeed, this assertion is rebutted by documents submitted to the Court, which show that the City Defendants requested documents directly from the State Court, ECF No. 126-4, and by the Court's own review of the State Court's online system. Thus, Plaintiff has not satisfied the standard for sanctions under Rule 11 to show that the City Defendants acted "objective[ly] unreasonabl[y]" when they provided the State Court decision to the Court. *Margo*, 213 F.3d at 65. The Court in its discretion declines to impose sanctions upon the City Defendants.

Separately from Rule 11, the Court also has "the inherent power to impose sanction[s] on a party for perpetrating a fraud on the Court . . . if it is established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Almeciga*, 185 F. Supp. 3d at 427 (quotation marks and citation omitted).

Here, Plaintiff has provided no evidentiary support, much less clear and convincing evidence, that the City Defendants have committed a fraud upon the Court by submitting documents from the State Court. The Court therefore also declines to exercise its inherent power to impose sanctions upon the City Defendants.

## III.    Leave to Amend

Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "[A] district court may properly deny leave when amendment would be futile." *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999).

Plaintiff did not request leave to amend in his papers.  Even if Plaintiff had sought

such leave, to seek leave to amend, a plaintiff must at least "provide some indication of the

substance of the contemplated amendment before a court could entertain the request."  *Mariah*

*Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 624 (S.D.N.Y. 2014), *aff'd*, 607 F.

App'x 123 (2d Cir. 2015) (summary order); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d

493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . .

how amendment would cure the pleading deficiencies in its complaint.").  There is no

indication here of how a Fourth Amended Complaint could cure the flaws the Court has

identified above.  Moreover, as explained above, Plaintiff has amended his complaint three

times in response to previously filed motions to dismiss that articulated many of the present

arguments, and the Court previous warned that Plaintiff would not be provided unlimited

opportunities to amend.  *See* ECF No. 113. Therefore, the Third Amended Complaint is

dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.  The Clerk

of Court is respectfully directed to DISMISS the Third Amended Complaint, to CLOSE the

motions pending at ECF Nos. 119, 121, and 122, and to CLOSE the case.

Dated: March 21, 2024
       New York, New York

                                        SO ORDERED.


                                        _____
                                        JENNIFER L. ROCHON
                                        United States District Judge